UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JUAN CANDELARIA,

                                        Plaintiff,

                -vs-                                        00-CV-00240C(SR)

NEW YORK STATE DEPARTMENT OF CORRECTIONS;
ELMIRA CORRECTIONAL FACILITY;
J. HOUGHTLING; PERFETTI; D. C. AUGUSTINE;
HOWARTH; FLOYD G. BENNETT, JR.;
RAYMOND PACHECO; LANE ECK; D. SMITH;
R. BAKER,

                                        Defendants.

_____

APPEARANCES:     STEPHENS & STEPHENS, LLP (R. WILLIAM STEPHENS, ESQ., OF
                 COUNSEL), Buffalo, New York, for Plaintiff.

                 ATTORNEY GENERAL OF THE STATE OF NEW YORK
                 (STEPHEN F. GAWLIK, ESQ., Assistant Attorney General, of
                 Counsel), Buffalo New York, for Defendants.

## INTRODUCTION

        Plaintiff is an inmate incarcerated by the New York State Department of Corrections

("DOCS"), and was housed at the Elmira Correctional Facility ("ECF") from December 2,

1997 to August 28, 2001.  He brought this action *pro se* on March 16, 2000 with the filing

of several documents, including a motion for preliminary injunction, motion to consolidate,

and a request for production of documents.  Items 1 - 6.  In his Second Amended

Complaint filed on September 14, 2000 (Item 13), plaintiff asserted claims under the

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, Section 504 of the

Rehabilitation Act, 29 U.S.C. § 794, *et seq.*, and 42 U.S.C. §§ 1983, 1985, and 1986.

Specifically, plaintiff, who requires dialysis and has limited mobility due to his use of a wheelchair, claims that he was denied access to programs and proper medical care, and was harassed and assaulted by staff on the basis of his race and disability.

Defendants have moved for summary judgement dismissing the Complaint in its entirety.  Item 67.  For the reasons that follow, the court grants defendants' motion and dismisses the action.

## BACKGROUND

Plaintiff originally filed this action *pro se* in March 2000.  Item 1.  In an order dated April 11, 2000 (Item 7), the Hon William M. Skretny ordered plaintiff to file an Amended Complaint, which he did on April 18, 2000.  Item 8.  This court subsequently appointed counsel to represent plaintiff.  Item 10.  A Second Amended Complaint was filed on September 14, 2000.  Item 13.  The Complaint named as defendants DOCS, ECF, and DOCS employees assigned to ECF, including Floyd Bennett, Dana Smith, J. Houghtling, M. Perfetti, R. Baker, L. Eck, K. Howarth, D.C. Augustine, and R. Pacheco.  Item 13, ¶¶ 7-14. Defendants ECF, Bennett, Smith, Houghtling, Perfetti, Baker, Howarth, Augustine, and Pacheco appeared by answering the Complaint on May 18, 2001.  Item 36.  Defendant DOCS answered on November 6, 2001.  Item 64.  Defendant Eck has not been served, nor has he appeared.

The parties engaged in some document discovery.  On January 18, 2002, the court issued a scheduling order directing defendants to file a motion to dismiss and/or for summary judgment before March 17, 2002.  Defendants' motion for summary judgment was filed on March 18, 2002.  Plaintiff originally filed an affidavit in opposition on April 19,

2002. Item 71. Plaintiff's counsel then requested an extension until May 21, 2002 to file a Memorandum of Law, which the court granted. Item 73. Plaintiff's Statement of Undisputed Facts, Item 74, and Memorandum of Law, Item 75, were filed on May 31, 2002.

Oral argument was heard on July 25, 2002. At that time, plaintiff's counsel advised the court that he intended to submit documents regarding plaintiff's exhaustion of administrative remedies. That information was filed on August 19, 2002. Item 78. The defendants filed a responsive declaration on October 21, 2002. Item 80. The court reserved decision pending the resolution of several cases involving exhaustion of inmate claims under the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. Those cases have now been decided.[1]

## FACTS

At all times relevant to the allegations in the complaint, plaintiff was housed at the ECF. Item 70, ¶ 5. He states that he developed renal disease in 1997 and has been dependent upon hemodialysis therapy for survival. Item 71, ¶ 1. He also states he is paralyzed from his waist down and, since 1988, has been "wholly dependent upon a wheelchair for any safe mobility." *Id.* In his 96-paragraph, 31-page complaint, plaintiff asserts a number of claims, including: when confined to the prison infirmary, he is

---

[1]In *Hemphill v. New York*, the Second Circuit stated that, where "a prisoner plaintiff plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies," a three-part inquiry should guide a district court's analysis of whether a plaintiff has met the requirements of § 1997e(a). *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004). First, a district court must determine whether administrative remedies were available for the purposes of § 1997e(a). *Id.* at 686-88. Second, a court must consider whether the defendant should be estopped from asserting the defense of failure to exhaust by inhibiting the ability of the plaintiff to pursue administrative remedies. *Id.* at 688-89. Lastly, where administrative remedies were available and the defendant has not forfeited the defense of failure to exhaust, a court must consider whether "special circumstances" excuse the plaintiff's failure to pursue or exhaust administrative remedies. *Id.* at 689-91.

"deprived of significant institutional benefits solely because of sickness and serious disability;" the "prison administration . . . treat[s] infirmary patients in a significantly different way, discriminates against such persons in violation of the Americans With Disabilities Act;" prison policy regarding diet for dialysis patients is a violation of the ADA and constitutes deprivation of proper treatment.   Item 13, ¶ 5. In addition, plaintiff alleges he has been "subjected to numerous beatings, assaults and batteries at the hands of correction facility personnel accompanied by derogatory racial references"; he has brought these matters to the attention of ECF administrative personnel and they are "deliberately indifferent to the illegal treatment of plaintiff."   *Id.*   He also claims that he has suffered discrimination based on disability pertaining to the ECF Mess Hall eating policy under which he is not allowed to sit and eat with able-bodied inmates, Item 13, ¶¶ 66-69, and has suffered retaliation for detailing the violations contained in his complaint.   *Id.,* ¶¶ 62, 78.   Plaintiff also claims that he is the victim of risky and unhygienic dialysis procedures, including the reuse of plastic clamps on numerous patients and the assignment of medical tasks to non-medical personnel.   *Id.,* ¶¶ 56-60, 70-73.   Finally, plaintiff alleges that he has been denied physical therapy and peritoneal dialysis.   *Id.,* ¶¶ 76-78.   Plaintiff has asserted claims under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution, the ADA and Section 504 of the Rehabilitation Act, and the Civil Rights Act of 1987.

The record reveals that while at ECF, plaintiff filed eight formal grievances.   Item 70, ¶ 12:[2]

---

[2] In his Statement of Undisputed Facts, plaintiff disputes that he filed only eight grievances. Item 74, p. 1. In his Affidavit, he claims that because he "did not have direct access to the Inmage [sic] Grievance program at Elmira," he submitted "dozens of grievance complaints" directly to Superintendent Floyd Bennett or First Deputy Superintendent Dana Smith, with instructions that they be forwarded to the

(1)     Grievance EL-18-519-98 was filed on June 3, 1998.  Plaintiff claimed he was denied the opportunity to participate in prison programming and activities due to being confined to a wheelchair.  Item 70, ¶ 13.  He complained that many areas of the prison were not wheelchair-accessible and demanded a hearing to determine whether he was entitled to a reasonable accommodation under the ADA. Item 69, Ex. B. This grievance contains many of the issues that plaintiff raised in his Second Amended Complaint pursuant to the ADA and Section 504.  This grievance was not appealed to the Central Office Review Committee ("CORC"), as plaintiff prevailed upon the Superintendent's review.  In response to the grievance, plaintiff was advised that the Deputy Superintendent for Program Services "will make available the necessary placement steps to meet the grievant's needs."  *Id.*

(2)     Grievance EL-18995-98 was filed on September 14, 1998.  Plaintiff requested a renal diet. Item 70, ¶ 14; Item 69, Ex. C.  This grievance was granted, and an investigation revealed that plaintiff was receiving a renal diet.  Nonetheless, plaintiff appealed to the CORC, complaining that his diet did not meet the specifications of a renal diet.  Item 69, Exh. C.  Following the appeal, a further investigation concluded that plaintiff was receiving a renal diet.  *Id.*

(3)     Grievance EL-20072-99 was filed on May 9, 1999.  Plaintiff claimed he was subjected to racial remarks by ECF personnel and was served false

---

Inmate Grievance Committee.  Item 71, ¶¶ 9, 10. Many of these "grievance complaints" are letters. *Id.,* ¶¶ 11-22.

5

misbehavior reports.  Item 70, ¶ 15; Item 69, Ex. D.  This grievance was denied for insufficient evidence and plaintiff did not appeal to the CORC.

(4)  Grievance EL-20315-99 was filed on June 21, 1999.  Plaintiff alleged he was ordered to walk through a metal detector, despite the fact that he was paralyzed, and was assaulted.  Item 70, ¶ 16; Item 69, Ex. E.  The Superintendent found no evidence to sustain the grievance, and plaintiff did not appeal the Superintendent's decision.

(5)  Grievance EL-22379-01 was filed on April 2, 2001.  Plaintiff claimed he was subjected to an illegal frisk and harassed by DOCS employees.  Item 70, ¶ 17; Item 69, Ex. F.  This grievance was appealed and was found to be without merit.  The alleged conduct that was the subject of this grievance post-dates the filing of the Second Amended Complaint.

(6)  Grievance EL-22537-01 was filed on June 13, 2001.  Plaintiff alleged that he was subjected to physical and verbal abuse by Correctional Officer Staight during a November 2000 incident.  Item 70, ¶ 18; Item 69, Ex. G.  This grievance was appealed to the CORC.  However, the conduct that was the subject of this grievance post-dates the filing of the Second Amended Complaint.

(7)  Grievance EL-22579-01 was filed on June 25, 2001.  Plaintiff asserts that he was subjected to derogatory remarks by Lt. Giannino in June, 2001.  Item 70, ¶ 19; Item 69, Ex. H.  This grievance was appealed to the CORC.  The conduct that was the subject of this grievance also post-dates the filing of the Second Amended Complaint.

6

(8)     Grievance EL-22772-01 was filed on September 4, 2001.  Plaintiff claims
        that he was assaulted in the dialysis unit by staff members on June 8, 2001.
        Item 70, ¶ 20; Item 69, Ex. I.  Plaintiff did not appeal this grievance.

The court notes that no formal grievances were filed regarding alleged inadequate medical treatment or deliberate indifference to plaintiff's medical needs.

In his Affidavit in Opposition to Defendants' Motion for Summary Judgment, plaintiff has set forth letters he wrote to numerous ECF personnel complaining about the treatment he received, spanning from April 1998 to May 2001, and the responses he received thereto.  Item 71, Exhs. A, B.  He stated that during his stay at ECF, he "did not have direct access to the inmate Grievance Committee" because it was located in an area of the prison that was not wheelchair-accessible.  *Id.,* ¶ 8.  Plaintiff also stated that he was "personally instructed" by the Superintendent of the facility to send his "grievance/complaints" to the Superintendent, who would forward them to the inmate grievance office.  *Id.*  As proof of this, plaintiff has submitted a letter, dated May 31, 2001, that he received from the Superintendent.  In it, the Superintendent advised plaintiff that he had received a complaint, but that plaintiff had omitted the name of the officer involved. Plaintiff was advised to "send me the name of the officer and I will forward your complaint to the Inmate Grievance Office for processing as a discriminatory harassment grievance." Item 71, Exh. B, p.21.

Plaintiff also submitted correspondence he received in response to the grievance he filed complaining of the lack of handicap accessibility to programs and activities.  Item 78.  This grievance was not appealed, because prison officials assured him that reasonable accommodations would be provided.  *Id.,* p. 2.  The correspondence indicates

that ECF officials were aware of plaintiff's complaints and his need for wheelchair accessibility, and details their efforts to provide accommodations with respect to plaintiff's use of the outside recreation facilities, attendance at the Fourth of July picnic, wheelchair-accessible cells in general population, inmate assistance for him, law library access, and access to the Aggression Replacement Treatment ("ART") program.  In a memo dated March 24, 1999 from the Deputy Superintendent for Program Services, plaintiff was advised that "[y]our attendance at grievance hearings will be accommodated in a handicap accessible location when necessary.  You should indicate in any grievance that reaches the hearing stage that you wish to be present and the hearing will be held in a location where you can attend."  *Id.*

## DISCUSSION

Defendants raise several arguments in support of their motion for summary judgment.  They contend that plaintiff has failed to exhaust his administrative remedies under the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, and that defendants are immune from suit under the Eleventh Amendment to the United States Constitution. Item 68, pp. 3-10.  Defendants also argue that plaintiff's claim of verbal harassment does not state a claim of constitutional magnitude under § 1983, and that his claims for injunctive relief are moot.

### 1.  Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment shall be granted if the pleadings and supplemental evidentiary

materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Morales v. Quintel Entertainment, Inc.,* 249 F.3d 115, 121 (2d Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986)).  Under the rule, the burden is on the moving party to inform the court of the basis for its motion and to demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  After the moving party has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  "[T]he non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)).

## 2.  Failure to Exhaust Administrative Remedies

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The Supreme Court in *Porter v. Nussle,* 534 U.S. 516 (2002), held that the PLRA requires exhaustion in all inmate suits about prison life, regardless of the federal right or statute asserted.

New York State provides a grievance procedure for inmates.  Pursuant to section 139 of the New York State Corrections Law and the regulations promulgated thereunder, inmates are permitted to file grievances concerning a variety of issues, including

allegations of staff misconduct.   In order for an inmate to exhaust his administrative remedies, he must complete the following three-step process before seeking relief pursuant to section 1983 in federal court, *see Reyes v. Punzal*, 206 F. Supp. 2d 431, 432 (W.D.N.Y.2002) (citations omitted):   (1) submit a grievance to the Inmate Grievance Review Committee ("IGRC") for its determination, (2) submit an appeal from an adverse IGRC determination to the superintendent of the facility for review and determination, and (3) submit an appeal from an adverse superintendent's determination to the Central Office Review Committee ("CORC") for a final administrative determination.  *See* 7 N.Y.C.R.R. § 701.7(a),  (b), (c).  Only after an inmate appeals to the CORC has he been deemed to have exhausted his administrative remedies.  *Parkinson v. Goord,* 116 F. Supp. 2d 390, 394 (W.D.N.Y. 2000).  Accordingly, plaintiff may bring suit in federal court pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, the ADA, and Section 504 of the Rehabilitation Act only after he has exhausted "any available administrative remedies, including all appellate remedies provided within the system."  *Fletcher v. Haase,* 2002 WL 313799, *1 (S.D.N.Y. Feb. 27, 2002) (citing *Booth v. Churner,* 532 U.S. 731, 735 (2001)).

The Second Circuit has recently examined exhaustion of administrative remedies under the PLRA and concluded that a three-part inquiry is appropriate in cases where an inmate "plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies . . . ."  *Hemphill v. State of New York,* 380 F.3d 680, 686 (2d Cir. 2004).  First, the court must determine whether administrative remedies were available to the plaintiff.  Second, the court should inquire whether defendants failed to raise or preserve the defense or whether their actions estop them from raising the

defense.   Third, if remedies were available and the defendants are not estopped from raising the defense, the court must determine whether plaintiff plausibly alleged special circumstances that would justify his failure to exhaust.  *Id.*  Defendants may be estopped from raising non-exhaustion when prison officials inhibit an inmate's ability to utilize grievance procedures or otherwise prevent him from seeking his administrative remedies. *Abney v. McGinnis,* 380 F.3d 663, 667 (2d Cir. 2004).  In *Hemphill,* the plaintiff failed to file a formal grievance, but wrote a letter directly to the Superintendent of the facility out of fear of retaliation from prison guards.  Additionally, the plaintiff argued that the letter to the Superintendent, as opposed to a formal grievance, was justified as a reasonable interpretation of DOCS regulations for expedited procedures in place at the time.  *Hemphill,* 380 F.3d at 689.  The court remanded the case to the district court on the question of whether some seemingly available remedies were rendered unavailable by the alleged threats, whether some or all of the defendants were estopped from raising the defense by their actions, and whether plaintiff was justified in his failure to file formal grievances. *Hemphill,* 380 F.3d at 691; *see also Giano v. Goord,* 380 F.3d 670 (2d Cir. 2004) (inmate failed to file grievance based on mistaken, but not unreasonable, belief that claim was non-grievable–case remanded on question of availability of administrative remedy); *cf. Ortiz v. McBride,* 380 F.3d 649, 654 (2d Cir. 2004) (oral complaints regarding conditions in Special Housing Unit not sufficient to exhaust administrative remedies–plaintiff did not contend that threats from guards prevented him from filing grievances or otherwise rendered DOCS grievance procedures unavailable).

Here, plaintiff filed eight grievances while he was housed at ECF, and only four of them were fully exhausted.  One exhausted grievance involved his request for a renal diet, which was granted, and all investigations revealed that plaintiff received the renal diet. Accordingly, this claim is not a part of this lawsuit.[3]  The remaining three grievances which were fully exhausted all involve episodes of alleged harassment that occurred in April and June 200, following the filing of the Second Amended Complaint, and are not a part of this action.  With the exception of plaintiff's claims regarding handicapped accessibility, the episodes which comprise plaintiff's complaint were either not grieved through the inmate grievance process or were not appealed to the final stage of review.[4]

In response, plaintiff has attempted to circumvent the exhaustion requirement by contending that the ordinary inmate grievance procedures were not available to him.  In Point I of his Memorandum of Law in response to the motion, plaintiff claims that as a wheelchair-bound inmate, he could not take part in the inmate grievance process because the Grievance Committee hearings were held in an area of the facility that was not wheelchair-accessible.  However, plaintiff's own evidence indicates that in a memo dated March 24, 1999, plaintiff was advised that any grievance hearing that he wished to attend

---

[3]  While in his "Program for Relief" at the conclusion of the complaint, plaintiff seeks "an order compelling Defendants to provide Plaintiff with a medically needed and prescribed diet . . .," Item 13, ¶ 96(c), nowhere in the complaint does plaintiff allege that he is not receiving a renal diet, and all investigations following the filing of the grievance indicated that plaintiff was receiving the medically prescribed diet.  Accordingly, even assuming that this grievance was fully exhausted, plaintiff has failed to allege a violation of the Eighth Amendment with regard to the renal diet.

[4]  With respect to the grievance regarding wheelchair accessibility, defendants acknowledge that plaintiff prevailed in his grievance and so did not appeal the decision.  Accordingly, defendants concede that there are issues of fact regarding plaintiff's exhaustion of this grievance. Item 80, ¶ 3.  Once an inmate receives a favorable ruling on a grievance, no further administrative proceedings are available to him, and the grievance is fully exhausted.  *Abney v. McGinnis*, 380 F.3d 663, 669 (2d Cir. 2004). However, as shall be discussed, *infra*, the claim must nonetheless be dismissed on Eleventh Amendment grounds.

would be conducted in an accessible location of the facility.   Item 71, Exh. B, p. 3A. Moreover, nothing about the location of the grievance hearings prevented plaintiff from sending grievances to the committee, as is evidenced by plaintiff's ability to send numerous letters of complaint to the Superintendent and other prison officials.   *Id.,* Exh. A.   The record indicates that plaintiff filed grievances on his own (*Id.,* Exh. A, p. 4), or that some of his letters of complaint were forwarded to the grievance committee for processing.   *Id.,* Exh. B, pp. 5, 17, 20.   Additionally, some of plaintiff's complaints were investigated by the Superintendent or referred to other staff for investigation and action.   *Id.,* pp. 1, 2, 4, 6 - 8, 10-16, 18, 19.   In each instance, plaintiff was advised of the action being taken on his complaint.   Thus, the administrative remedies of the inmate grievance program were clearly available to plaintiff despite his handicapping condition.

Additionally, plaintiff contends that the Superintendent effectively excused him of the need to follow the three-step grievance procedure, having personally instructed plaintiff to forward all complaints and grievances directly to him for processing.   Plaintiff states that as he did not have direct access to the inmate grievance program, he was compelled to submit all his "grievance complaints" directly to either the Superintendent or Deputy Superintendent "with instruction that said grievance complaints be forwarded by them to the Inmate Grievance Committee on my behalf."   Item 71, ¶ 9.   The court has reviewed all the letters of complaint in Exhibit A of Item 71, and has found no such instruction.   On the contrary, plaintiff typically asked the Superintendent to take whatever action he deemed "fit" and/or "fair."   *See* Item 71, Exh. A, pp. 15D, 21A, 16B, 17, 18B, 19C, 21A, 22E, 35, 44D, 51A, 51I, 53C, 55A, 57B, 61E, 62D.   While plaintiff has offered proof that he sent written letters of complaint to the Superintendent on a regular if not constant basis,

13

plaintiff's own evidence indicates that he was fully informed in return correspondence that some complaints were investigated by the Superintendent, while others were referred to staff members for investigation or action.  *Id.*, Exh. B., pp. 1, 2, 4, 6 - 8, 10-16, 18, 19. Plaintiff was clearly advised when one of his complaints was referred to the inmate grievance committee.  *Id.,* 71, Exh. B, pp, 5, 17, 20.

In support of his argument that the Superintendent excused him from the Inmate Grievance Program, plaintiff offers a letter from Superintendent Bennett dated May 31, 2001, which indicates that the Superintendent intended to forward a letter of complaint regarding harassment to the grievance committee in one particular instance but needed additional information from plaintiff.  This letter, which postdates all incidents detailed in the complaint, does not indicate a regular practice whereby all of plaintiff's complaints were to be forwarded to the grievance committee, nor does it absolve plaintiff of the obligation to fully exhaust his administrative remedies.  Significantly, plaintiff does not allege that the Superintendent advised him that he need not exhaust his administrative remedies by appealing the decisions of the inmate grievance committee to the CORC.  Based on the record, plaintiff could not have been misled into thinking that every letter of complaint that he sent to the Superintendent was a grievance to be processed by the inmate grievance committee, or that his grievances need not be appealed in order to be considered exhausted.  Additionally, plaintiff filed additional formal grievances with the Inmate Grievance Committee subsequent to the May 31, 2001 letter, and properly appealed them. Item 69, Exh. G.

Defendants have shown that, with the exception of the grievance regarding wheelchair accessibility, plaintiff has failed to exhaust his administrative remedies with

14

respect to the allegations that comprise the complaint, as required by the PLRA.  The inmate grievance procedures were fully available to him, despite his confinement to a wheelchair.  Moreover, defendants are not estopped from raising the defense of failure to exhaust.  While plaintiff has argued that he was discouraged from filing formal grievances by the Superintendent's actions, those arguments are not borne out by the record.  Plaintiff has failed to raise a genuine issue of fact regarding alleged representations of the Superintendent that he need not file grievances regarding prison life, or that he was absolved from the requirement that he exhaust his administrative remedies.  Finally, plaintiff has raised no "special circumstances," such as a misinterpretation of DOCS regulations, to justify his failure to file formal grievances.  Accordingly, the Section1983, 1985, and 1986 claims and the constitutional claims regarding prison conditions pursuant to the First, Fourth, Eighth, Fifth, and Fourteenth Amendments must be dismissed.  As plaintiff has failed to exhaust his claims, the court need not address the defendant's argument that verbal harassment does not constitute a constitutional violation.

### 3.  Eleventh Amendment Immunity

The Eleventh Amendment of the United States Constitution prohibits courts from exercising jurisdiction in lawsuits against a state unless the state has waived its sovereign immunity or Congress has expressly and validly abrogated that immunity.  *Bd. of Trustees of Univ. of Alabama v. Garrett,* 531 U.S. 356, 363 (2001).  To the extent that plaintiff adequately exhausted his administrative remedies with respect to the claims regarding wheelchair accessibility at ECF under Title II of the ADA and Section 504 of the

Rehabilitation Act , those claims must nonetheless be dismissed on the basis of Eleventh Amendment immunity.[5]

As a preliminary matter, "neither Title II of the ADA nor Section 504 of the Rehabilitation Act provides for individual capacity suits against state officials." *Garcia v. S.U.N.Y. Health Sciences Ctr.,* 280 F.3d 98, 107 (2d Cir. 2001). Therefore, plaintiff's ADA and Section 504 claims against the individual defendants in their personal capacities are dismissed. "Insofar as [plaintiff] is suing the individual defendants in their official capacities, he is seeking damages from New York, and the Eleventh Amendment therefore shields them to the same extent it shields [the State or State agencies]." *Id.,* at 107; *see also Hallett v. New York State Dep't of Corr. Services,* 109 F. Supp. 2d 190, 199 (S.D.N.Y. 2000); *Candelaria v. Cunningham,* 2000 WL 798636, *2 (S.D.N.Y. June 20, 2000); *Parkinson v. Goord,* 116 F. Supp. 2d at 399. The more difficult issue is whether Title II of the ADA and Section 504 of the Rehabilitation Act constitute a valid abrogation of the sovereign immunity of the state (i.e., defendants DOCS and ECF in this case).

In his Second Amended Complaint, plaintiff alleges that wheelchair-bound inmates are not provided reasonable access to prison facilities, including the law library, general library, ART program, academic school, mental health hospital, program committee, or inmate grievance committee. Item 63, ¶ 16. He also complains that inmates in the infirmary, where he has been housed from time to time due to health problems, have limited access to the prison commissary, law library, and other programs and activities. *Id.,* ¶ 17.

---

[5] In his grievance dated May 31, 1998, plaintiff stated that programs such as GED and ART are offered in areas of the facility which are not wheelchair-accessible. *See* Item 71, Exh. A4.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132.[6]  The Second Circuit has opined that Title II of the ADA and Section 504 of the Rehabilitation Act "offer essentially the same protections for people with disabilities." *Garcia,* 280 F.3d at 113.  The Second Circuit has also found that other than minor differences which are not applicable here, the "reach and requirements" of the ADA and Section 504 are "precisely the same" and it is not necessary to consider plaintiff's claims under each statute separately. *Weixel v. Bd. of Educ. of City of New York,* 287 F.3d 138, 146 n.6 (2d Cir. 2002).  Both the Rehabilitation Act and the ADA apply to prisoner claims.  *Pennsylvania Dep't of Corr. v. Yeskey,* 524 U.S. 206 (1998) (ADA); *Clarkson v. Coughlin,* 898 F. Supp. 1019, 1036 (S.D.N.Y. 1995).

Article XIV, Section 5 of the United States Constitution authorizes Congress to enforce by appropriate legislation the provisions of the Fourteenth Amendment, including the constitutional guarantee that no State shall "deprive any person of life, liberty, or property, without due process of law," nor deny any person "the equal protection of the laws." U.S. Const. Amend. XIV, §§ 1, 5.  In *Garcia*, the court found that Title II of the ADA exceeds Congressional authority under Section 5 of the Fourteenth Amendment.  *Garcia,* 280 F.3d at 110.  The court further concluded, however, that Title II validly abrogates state sovereign immunity to the extent that it allows private damage suits for actual constitutional

---

[6] Title I of the ADA prohibits discrimination in employment by reason of disability, and thus is inapplicable to this action.  Additionally, in *Bd. of Trustees of Univ. of Alabama v. Garrett,* 531 U.S. 356 (2001), the Court held that Title I of the ADA is not an effective abrogation of the state's sovereign immunity under the Eleventh Amendment.  Thus, states are immune from suit under Title I of the ADA.

violations.  *Garcia,* 280 F.3d at 110.   Consistent with *Garcia,* the Supreme Court has recently held that "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *U.S. v. Georgia,* 546 U.S. ___ , 126 S.Ct. 877, 882 (2006).

The Second Circuit requires plaintiffs who are bringing suit under Title II of the ADA to establish that defendant's conduct is proscribed by the Fourteenth Amendment.  This is accomplished by showing that the Title II violation was "motivated by discriminatory animus or ill will based on the plaintiff's disability."  *Garcia,* 280 F.3d at 111.  The court reasoned that "[g]overnment actions based on discriminatory animus or ill will towards the disabled are generally the same actions that are proscribed by the Fourteenth Amendment–*i.e.*, conduct that is based on irrational prejudice or wholly lacking a legitimate government interest."  *Id.*  The court in *Garcia* expressly held that "a knowing, willful or intentional violation of Title II does not rise to the level of 'discriminatory animus or ill will.'" *Denmeade v. King,* 2002 WL 31018148, *2  (W.D.N.Y. August 1, 2002) (quoting *Garcia,* 280 F.3d at 112).

Defendants argue that plaintiff cannot show that the lack of wheelchair accessibility to programs and activities at ECF was motivated by discriminatory animus or ill will.  Quite simply, they argue, ECF was not constructed with plaintiff in mind.  Plaintiff argues that he has shown discriminatory animus in the "repeated searches" of his cell, and "many instances where the officers have written him up and reported him with consequent penalties and loss of privileges . . . ."  Item 78, p. 4.

18

Plaintiff has misconstrued the requirements of *Garcia*.  The complaint fails to allege that any of the defendants acted or failed to act in the provision of programs to wheelchair-bound inmates based on irrational discriminatory animus or ill will based on disability. Plaintiff points to alleged violations of his civil rights unrelated to the issue of handicap accessibility, such as cell searches and unwarranted misbehavior reports, as proof of discriminatory animus.  However, while plaintiff may have raised an issue of fact that these incidents of harassment were motivated by discriminatory animus or ill will toward him, they are insufficient to show that the lack of handicap accessibility at ECF was motivated by such discriminatory animus or ill will. The fact that the defendants may have searched plaintiff's cell or brought disciplinary charges against him in retaliation for his litigious conduct does not raise an issue of fact regarding defendants' motivation in denying all wheelchair-bound inmates access to areas and programs at ECF.

With regard to the alleged violations of Title II of the ADA, plaintiff has at most alleged knowing violations of Title II which are inadequate under *Garcia* to show a violation of the Fourteenth Amendment and sustain a claim under the ADA.  *See Garcia,* 280 F.3d at 112.  Allegations of the denial of programs or accommodations without proof of discriminatory animus are simply insufficient to sustain a Title II claim.  *See Garcia,* 280 F.3d at 112 (allegation of denial of requested accommodation without contention of discriminatory animus); *Bayon v. State University of New York at Buffalo,* 2004 WL 625133, *2 (W.D.N.Y. February 6, 2004) (allegation of denial of requested accommodations, including incomplete grade and additional time for assignments, without proof of irrational discriminatory animus, insufficient under *Garcia*); *Denmeade v. King,*

2002 WL 31018148, at *2 (allegation that state university failed to provide handicap access to campus programs, services, activities, and facilities, without proof of discriminatory animus, is insufficient under *Garcia*); *Hamilton v. City College of City University of New York,* 173 F. Supp. 2d 181, 185 (S.D.N.Y. 2001) (allegation of denial of accommodation without proof of discriminatory intent is insufficient under *Garcia*).

Additionally, plaintiff's attempt to show discriminatory animus and ill will regarding the lack of handicap accessibility is severely undermined by his submission of correspondence from ECF officials regarding their efforts to provide plaintiff with reasonable accommodations.  In a memorandum dated March 24, 1999, R. Guzman, Deputy Superintendent for Program Services, advised plaintiff that the facility "is preparing handicap (wheelchair) accessible cells so that you and others similarly situated will have the opportunity to function in general population . . . ."  Item 78.  Additionally, Guzman stated that "there are plans underway to provide wheelchair access" to the outside yard, and that in the interim he would be provided with an inmate assistant "to physically move you to the ballpark area."  *Id.*  Plaintiff was assured that grievance committee hearings would be held in an accessible location in the facility, and that participation in the ART program would be accommodated when he was eligible.  *Id.*  In a memo dated August 27, 1999, the First Deputy Superintendent advised all F Block officers that an extra porter would be assigned to F Block for the purpose of moving plaintiff to areas of the facility that are not wheelchair accessible.  *Id.*  Additionally, plaintiff was advised that, as the law library was not wheelchair accessible, a law library clerk would contact him five times per week

to assist him, and that he would be allowed to have up to five law books in his cell at a time. *Id.*

Defendants have established that they are entitled to judgment as a matter of law on plaintiff's ADA claims. Plaintiff has failed to raise a genuine issue of fact that any Title II violations were "motivated by either discriminatory animus or ill will due to disability . . . ." *Garcia,* 280 F.3d at 112. Accordingly, the ADA claims must be dismissed.

With respect to Section 504, the Eleventh Amendment analysis differs from that under the ADA. In *Garcia,* the Second Circuit, recognizing that the Rehabilitation Act was enacted pursuant to Congressional authority granted by the Spending Clause of Article I of the Constitution, found that Congress expressly intended that the acceptance of federal funds be conditioned on the waiver of Eleventh Amendment immunity, but ruled that a state may only effectively waive its sovereign immunity through an "'intentional relinquishment or abandonment of a known right or privilege.'" *Garcia v. S.U.N.Y. Health Sciences Ctr.*, 280 F.3d at 114. Since *Garcia,* courts have found that the state's acceptance of Section 504 federal funds constitutes a knowing waiver of immunity for Rehabilitation Act claims which are based on post-*Garcia* events. *See Blasio v. New York State Dep't of Corr. Svcs.*, 2005 WL 2133601, *3 (W.D.N.Y. August 31, 2005); *Denmeade v. King*, 2002 WL 31018148, at *3; *see also Cardew v. New York State Dep't of Corr. Servs.*, 2004 WL 943575, *8 (S.D.N.Y. April 30, 2004) (stating that "New York appears to have continued to accept federal funds and thus, in the wake of *Garcia,* has waived its sovereign immunity from suit under Section 504 of the Rehabilitation Act."). Here, all the incidents to which plaintiff refers in the complaint, and the acceptance of Rehabilitation Act

funds, occurred from 1997 to 2000, well before the Second Circuit decision in *Garcia* and the Supreme Court decision in *Bd. of Trustees of Univ. of Alabama v. Garrett,* 531 U.S. 356 (2001). Acceptance of such funds, prior to these decisions, does not constitute a knowing waiver of sovereign immunity. *See Garcia,* 280 F.3d at 114-15; *see also Blasio v. New York State Dep't of Corr. Svcs.*, 2005 WL 2133601, at *3 (abrogation of immunity effective as of date of *Garcia* decision); *Sacca v. Buffalo State College,* 2004 WL 2095458, *2 (W.D.N.Y. September 20, 2004) (abrogation of Eleventh Amendment immunity effective as of date of *Garrett* decision);*Denmeade v. King,* 2002 WL 31018148, at *2 (abrogation effective as of date of *Garcia* decision). Accordingly, plaintiff's Section 504 claims for money damages must also be dismissed.[7]

### CONCLUSION

Defendants' motion for summary judgment is granted, and the complaint is dismissed.

So ordered.

\s\ John T. Curtin

JOHN T. CURTIN
United States District Judge

Dated: March    20    , 2006
p:\opinions\00-240.march0306

---

[7] The court notes that plaintiff's claims for injunctive relief at ECF must be dismissed as moot, as he is no longer housed at ECF. *See Parkinson v. Goord,* 116 F. Supp. 2d 390, 398 (W.D.N.Y. 2000).